IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMUNDO JOHNSON,<br><br>        Petitioner,<br><br>   v.<br><br>FELKER, Warden,<br><br>        Respondent. | No. C 08-4320 SBA (PR)<br><br>**ORDER DENYING PETITION FOR**<br>**WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction he received in Monterey County Superior Court. Respondent has filed an answer addressing the merits of the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

**BACKGROUND**

**I.    Case History**

On August 1, 2004, Petitioner Romundo Johnson fought with his girlfriend and held her by the throat until she passed out. On August 8, 2004, he punched her in the face and elsewhere about her body and stabbed her in the arm. On August 12, 2004, he ripped out the telephone because he

did not want her to use it any more.

A state court jury found Petitioner guilty of the following: (1) one count of corporal injury to cohabitant (Cal. Penal Code § 273.5(a)) based on an August 1, 2004 incident, (2) one count of assault by means likely to produce great bodily injury (Cal. Penal Code § 245(a)(1)) based on an August 1, 2004 incident, (3) three counts of corporal injury to a cohabitant (Cal. Penal Code § 273.5) based on an August 8, 2004 incident, and (4) one count of disabling a telephone line (Cal. Penal Code § 591) based on an August 12, 2004 incident. (Resp't Ex. 6 at 1.) The trial court sentenced Petitioner to a term of sixteen years and four months. (Id.) The California Court of Appeal affirmed the judgment in a published opinion dated May 22, 2007 (id.), and the California Supreme Court denied a petition for review on September 25, 2007, (Resp't Ex. 11).

Petitioner filed the instant petition on September 15, 2008, and claimed that: (1) the trial court erred in permitting the jury to hear testimony about a prior victim's statement because it violated the Confrontation Clause; (2) the trial court erred in convicting him because there was insufficient evidence to support a conviction of disabling a telephone line, and the term "unlawful" was not defined for the jury; and (3) the trial court erred in imposing three counts of corporal injury to a cohabitant based on a single continuous assault.

On December 4, 2009, Respondent was ordered to show cause why the petition should not be granted.. Respondent filed an answer and memorandum of points and authorities on April 2, 2010, and lodged a number of exhibits. Petitioner filed a traverse on May 28, 2010.

**II.   Statement of Facts**

The following facts are taken from the opinion of the California Court of Appeal:

> The victim, known as Jane Doe at trial, lived with defendant for about two or three months during 2004. On August 1, 2004, Doe and defendant had been drinking wine when defendant became violent and choked her so tightly she passed out and landed, facedown, on the hard kitchen floor. The fall resulted in a knot on her forehead and a bruise by her eye.
>
> A week later, defendant became angry with Doe because he thought she had been talking to one of his friends. As Doe testified, "That's when he beat me up real bad." He punched her in the nose, eyes, and mouth. He choked her and held her by her throat against the wall. H e struck her on her neck, her arm, her lower back, and her leg. He also stabbed her in the left arm. Doe could not see what it was he used to stab her;

she just knew that she suffered a bleeding wound during the struggle. At trial, Doe still had a scar on her left upper arm.

The prosecution introduced photographs of Doe's injuries taken on August 12, 2004, four days after the beating. The photographs showed Doe with two black eyes, a split lip, and bruising on her neck, upper chest, and the right side of her face. There was bruising and an open wound on her arm. The back of her neck was bruised as was the part of her back over the left shoulder blade and her right hip. There was bruising on the undersides of both arms that, Doe speculated, must have occurred when defendant held her back as she tried to fight him off.

When the beating was over, Doe did not call the police because she did not want defendant to get in trouble. When, at her sister's urging, she called the police on August 12, 2004, rather than go to the police department, Doe asked the police to come to her because she was "embarrassed" to go outside.

On the morning of August 12, 2004, before Doe called the police, Doe and defendant had another argument. Defendant told her she had too many people in the house. He cut the telephone cord, pried the telephone jack out of the wall with a hammer, cut the cables on the television, and left the apartment, taking the telephone with him because, he said, he did not want her to use it.

Epifanio Sevillo, a former public safety officer with the City of Marina, testified about defendant's involvement in a prior incident of domestic violence. In August 1995, Sevillo responded to a report of a domestic disturbance. When he reached the address, he knocked and, at first, did not hear anything. After a second knock he heard a woman screaming from inside the apartment. Defendant answered the door. There was blood on his hands and his shirt. A woman was screaming from the back of the residence. Sevillo went inside and found a woman in the bathroom, sitting on the toilet, slumped over and covering her face. She had blood on her hands and her face. When the woman removed her hands from her face, Sevillo saw that her nose was swollen and red and the bridge of her nose was purplish. The woman was "pretty emotional, distraught" and crying. Sevillo spoke to her to see if she was okay and "make sure she got some medical treatment." Sevillo asked her "what happened" and she said, "He punched me in the face, look at my nose." Sevillo then determined that the woman had been living with defendant and that he was the father of her one-year-old child. Sevillo identified photographs of the woman with a red, swollen, and bleeding nose. This, he said, was her condition when he saw her in August 1995.

The prosecution also produced another prior victim who had had a dating or habitation relationship with defendant. In November of 2002, the victim and defendant had an argument about the music being played in their residence. In his anger defendant damaged bottles in the kitchen and plants and tables in the living room. He broke the mantelpiece and he broke or threw on the floor the items that had been on the mantelpiece, the fireplace tools, and the stereo speaker. Then, in leaving, defendant pushed the victim so hard that she almost fell over the balcony railing.

Defendant did not testify. His defense was to challenge Doe's credibility and argue that she must have received her injuries when she went out to a local bar to check on her uncle.

People v. Johnson, 150 Cal. App. 4th 1467, 1472-73 (2007). (Resp't Ex. 6 at 2-4.)

3

**DISCUSSION**

**I.      Legal Standard**

**A.      Standard of Review for State Court Decisions**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

**1.      Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of  clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### a. **Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### b. **"Contrary to"**

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### c.  **"Unreasonable Application"**

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit]

6

ha[s] previously afforded them.

Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### 2. Sections 2254(d)(2), 2254(e)(1)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor, 366 F.3d at 999-1000. In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1).

"Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's claims.

## II.   Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b),(c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). The parties do not dispute that Petitioner has exhausted his claims. The Court, therefore, considers Petitioner's claims on the merits.

## III.   Legal Claims

Petitioner alleges that: (1) the trial court erred in permitting the jury to hear testimony about a prior victim's statement because it violated the Confrontation Clause; (2) the trial court erred in convicting Petitioner because there was insufficient evidence to support a conviction of disabling a telephone line, and the term "unlawful" was not defined for the jury; and (3) the trial court erred in imposing three counts of corporal injury to cohabitant based on a single continuous assault.

### 1.   Confrontation Clause

Petitioner contends that the trial court erred in allowing Sevillo to testify about a statement made by a prior domestic violence victim of Petitioner's, in lieu of the victim herself, because the prior victim's statement was testimonial. (Pet. at 6; Docket No. 1.) Respondent asserts that because

8

there was an ongoing emergency when the prior victim's statement was made, the statement was not testimonial in nature, and the trial court did not err in allowing Sevillo to testify about the statement. (Resp't Mem. of P. & A. at 3; Docket No. 10.)

The Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unable to testify and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 51 (2004). Statements are not testimonial "when made in the course of police interrogation under circumstances indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 822 (2006). However, statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822 (footnote omitted).

In Davis,[1] 547 U.S. 813, the United States Supreme Court consolidated two separate cases: (1) Davis v. Washington and (2) Hammon v. Indiana.[2] In Davis, the Court determined that a recording taken by a 911 operator was nontestimonial because the victim was "speaking about events as they were actually happening," and she was calling for "help against [a] bona fide physical threat." Id. at 827. Consequently, the circumstances surrounding the call "objectively indicate[d that] its primary purpose was to enable police assistance to meet an ongoing emergency." Id. at 828. Thus, the Confrontation Clause did not bar the introduction of the 911 report. In contrast, in Hammon, officers responded to a domestic disturbance call and found the victim "alone on the front porch." Id. at 819. After gaining the victim's permission, the officers entered the house and noticed broken glass on the floor of the house. Id. One of the officers took the victim to a separate room and asked her what had happened. Id. at 819-20. After hearing the victim's account, the officer

---

[1] All references to Davis are to the Supreme Court case Davis, 547 U.S. 813, unless otherwise specified.

[2] Hammon v. Indiana, 546 U.S. 976 (2005), was consolidated with Davis v. Washington, 546 U.S. 975 (2005). All references to Hammon, unless otherwise specified, refer to the Hammon portion of the consolidated Davis Supreme Court case. See Davis, 547 U.S. 813.

gave the victim a "battery affidavit" which she signed. Id. at 820 (internal quotations omitted). The Court held that statements taken by the officer were testimonial because the victim's statement was merely a "narrative of past events" that was delivered in a safe environment. Id. at 832.

Petitioner argues that based on Davis, the statement of the prior victim in the instant case should have been barred because it was testimonial. (Pet'r's Traverse ("Traverse") at 3; Docket No. 11.) Petitioner contends that there was no ongoing emergency when Sevillo questioned the prior victim. (Id.) Specifically, Petitioner claims that the instant case is similar to Hammon, and thus, the prior victim's statement in the case at bar is testimonial. (Id.) However, Respondent counters that the instant case can be distinguished from Hammon, because in the instant case, the prior victim was bleeding and screaming for help, and Sevillo did not "memorialize" the event with an affidavit. (Resp't Mem. of P. & A. at 6.) Furthermore, unlike in Hammon where the victim was describing earlier events, here, the prior victim was in "imminent danger" and was not acting as a witness or testifying. Id. Thus, Respondent argues that Sevillo questioned the prior victim to determine whether medical assistance was required. (Id.)

The California Court of Appeal rejected Petitioner's argument:

> The facts surrounding the prior victim's statement to Sevillo do straddle the line between the two cases decided in Davis. We decide the issue by applying the test set forth by the court: Did the circumstances objectively indicate that there was an ongoing emergency when the victim made the statement to Sevillo? We think they do. Sevillo heard the woman screaming as he stood at the door; the man who answered the door had blood on his hands; and the woman in the bathroom had a bloody, broken nose. That is the only information the officer had when he asked "What happened?" Indeed, although he might have suspected domestic violence, Sevillo did not know at that point whether or not a crime had been committed. The officer interrupted an ongoing emergency and obtained information from the victim in order to assess the situation. Thus, her statement to him was not testimonial.

(Resp't Ex. 6 at 12.)

Petitioner's attempt to analogize the instant case to Hammon is unpersuasive because, unlike the victim in Hammon, here, the prior victim was bleeding profusely and screaming for help.[3]

---

[3] Petitioner claims that the prior victim's cry "was not a cry for help to enable officers to immediately end a threatening situation." (Traverse at 5.) However, Petitioner provides no evidence supporting his contention. A federal habeas court may grant a writ if it concludes a state

10

(Resp't Ex. 6 at 3.) Under this record, the California Court of Appeal reasonably concluded that Sevillo "interrupted an ongoing emergency," and that the purpose of his questions was to "assess the situation." (Id. at 12.) Therefore, the state court's finding that the prior victim's statement was nontestimonial was not an unreasonable determination.

Moreover, even if the prior victim's statement were testimonial, Petitioner is not entitled to relief. For purposes of federal habeas review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect on the jury's verdict. Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S. 619 (1993)). Here, on account of the extensive evidence supporting Petitioner's conviction, any error in admitting the prior victim's statement did not have an actual and prejudicial effect on the jury's verdict. See Hernandez, 282 F.3d at 1144. Accordingly, the trial court's decision to permit testimony regarding a prior victim's statement was neither contrary to, nor an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d).

### 2. Conviction for Disabling a Telephone Line

Petitioner contends that there was insufficient evidence to support a conviction for disabling

---

court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor, 366 F.3d at 1005. A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor, 366 F.3d at 999-1000. In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. Here, the state court's determination that the prior victim screamed for help is supported by the record because the prior victim had just been assaulted and was bleeding. (See Resp't Ex. 6 at 12.) Thus, based on an intrinsic review under § 2254(d)(2), the state court's fact finding process was not unreasonable. Furthermore, Petitioner does not provide evidence to rebut the presumption of correctness; therefore, the California Court of Appeal's version of the facts control under § 2254(e)(1).

a telephone line, and that the trial court erred in failing to define the term "unlawful" for the jury. (Pet. at 6.) Respondent claims that Petitioner has not raised a federal question because the California Court of Appeal resolved the issue as a matter of statutory interpretation. (Resp't Mem. of P. & A. at 7.)

### a. **Insufficient Evidence**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, see id. at 324. However, the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

The state's highest court is the final authority on the law of that state. Sandstrom v. Montana, 442 U.S. 510, 516-17 (1979). Even a determination of state law made by an intermediate appellate court must be followed and may not be "'disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Hicks v. Feiock, 485 U.S. 624, 630 n.3 (1988) (quoting West v. American Telephone & Telegraph Co., 311 U.S. 223, 237-38 (1940)).

Petitioner contends that, as a matter of law, he cannot be convicted for a violation of Cal. Penal Code § 591[4] because he disabled his own phone. Section 591 provides, in relevant part, that "[a] person who unlawfully and maliciously takes down, removes, injures, or obstructs any line of telegraph, telephone, or cable television . . . is punishable by imprisonment in the state prison . . . ."

---

[4] All further statutory references are to the California Penal Code unless otherwise indicated.

Petitioner also claims that he did not remove the phone immediately after assaulting the victim, nor did he prevent her from calling the police. (Traverse at 7.) According to Petitioner, there is no evidence that he removed the phone with any "unlawful purpose in mind." (Id.) Therefore, Petitioner asserts that his act of removing the telephone was not independently unlawful because the telephone line was in an apartment rented in his name and the "telephone was his personal property." (Id. at 6.)

As a threshold matter, the Court must first determine whether "unlawful" is a required element of a section 591 conviction. See Jackson, 443 U.S. at 324 & n.16 (noting that sufficiency of evidence claims are reviewed based on the elements defined by state law). The California Court of Appeal concluded that under California law, "one may violate [section 591] by disabling one's own telephone so long as one acts "'unlawfully and maliciously'" in doing so." (Resp't Ex. 6 at 13 (citing People v. McElroy, 126 Cal. App. 4th 874, 883 (2005)).) Additionally, the court determined, as a matter of statutory interpretation, that section 591 conviction does not require "the conduct be unlawful *independent of* the prohibition contained in section 591," and that "[p]roof that a person did the act with malice is proof that the act was unlawful." (Resp't Ex. 6 at 16.) Notably, Petitioner fails to refute Respondent's contention that "[t]he California Supreme Court has never opined that section 591 includes a separate and independent showing of unlawfulness that exceeds the act of damaging the utility line itself." (Resp't Mem. of P. & A. at 13.) Furthermore, this Court is unaware of any California Supreme Court cases that contradict the California Court of Appeal's ruling. Accordingly, this Court is bound by the California Court of Appeal's decision that "unlawful" is not a required element of a section 591 conviction.

The California Court of Appeal also rejected Petitioner's claim that there was insufficient evidence to sustain a section 591 conviction:

> Defendant does not dispute that the evidence was sufficient to support the jury's implied finding of malice. Nor does defendant argue that his conduct in removing the telephone and jack was lawful beyond the fact that the conduct did not violate a law other than section 591. That is to say, there was no evidence of excuse or justification. Accordingly, the evidence was sufficient to support defendant's conviction of section 591.

(Resp't Ex. 6 at 18.)

In reviewing a claim challenging the sufficiency of the evidence, the relevant inquiry "must be not to simply determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318. However, "this inquiry does not require a court to 'ask' itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." Id. at 318-19 (citing Woodby v. INS, 385 U.S. 276, 282 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). Here, the Court of Appeal found sufficient evidence to support the conviction. Petitioner does not dispute that he acted *with malice*, and the Court of Appeal determined that Petitioner's actions did not need to be independently unlawful. (See Resp't Ex. 6 at 18). Taken in the light most favorable to the prosecution, this Court concludes that a reasonable juror could have found Petitioner guilty of section 591. See Jackson, 443 U.S. at 319. Accordingly, Petitioner's insufficiency of evidence claim fails.

### b. Jury Should Have Received Instructions Defining the Term "Unlawful"

A jury instruction that omits an element of an offense is constitutional error subject to federal habeas review. See Neder v. United States, 527 U.S. 1, 8-11 (1999). The California Court of Appeal rejected Petitioner's argument that the jury should have received instructions defining the term "unlawful":

> Defendant also argues that the trial court should have defined the term "unlawful" for the jury. No such instruction was warranted. We have concluded that the statute does not require a finding that the conduct was independently unlawful. And since there was no evidence of excuse or justification for the conduct, the concept of unlawfulness as it is used in section 591 was superfluous and there was no reason to instruct the jury on the point or to define the term.

(Resp't Ex. 6 at 18.)

Petitioner's argument is unavailling because, according to state statutory interpretation, an "unlawful" act is not an element of the offense. (Id.) Because the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus," this Court is bound by the California Court of Appeal's conclusion that "unlawful" is not an essential element of a section 591 conviction. See Bradshaw, 546 U.S. at 76. Thus, the failure to define "unlawful" to the jury was not a failure to define an essential element of the crime. Cf. In re Winship, 397 U.S. at 364 (holding that a due process violation occurs when one is convicted without "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). Accordingly, the California Court of Appeal's conclusion regarding jury instructions was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based upon an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

### 3. **Multiple Convictions for Corporal Injury to Cohabitant**

Petitioner contends that the trial court abused its discretion and violated section 654[5] when it sentenced him on three counts of section 273.5[6] that stemmed from a single continuous assault on August 8, 2004. (Pet. at 6.) In other words, Petitioner argues that a single assault can only lead to a conviction of a single count of battery because "the state cannot split up one crime and prosecute it in parts." (Id.) Respondent asserts that Petitioner fails to raise a federal question in his attack on the California Court of Appeal's determination that Petitioner could be charged with multiple counts of battery under California law because the victim sustained multiple injuries on various parts of her body. (Resp't Mem. of P. & A. at 14.)

A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). In other words, "it is only noncompliance with

---

[5] In relevant part, section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one . . . ."

[6] In relevant part, section 273.5 provides: "Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony . . . ."

15

federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010) (emphasis in original). The Supreme Court has repeatedly held that federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law. See Swarthout v. Cooke, 131 S. Ct. 859, 861-62 (2011); see, e.g., Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination that arsenic trioxide is a poison as a matter of law and not an element of the crime for jury determination is not open to challenge on federal habeas review).

Nothing in the record suggests that Petitioner has raised a claim that warrants federal habeas relief. Neither the petition for a writ of habeas corpus nor the state petition for review alleges a federal violation. Petitioner merely claims that a state court wrongly interpreted state law when it convicted him on multiple counts of section 273.5. Without more, Petitioner fails to establish a federal claim. See Swarthout, 131 S. Ct. at 861-62. Accordingly, Petitioner's claim does not warrant federal habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that any of his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IT IS SO ORDERED.

DATED: 9/8/11

SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\HC.08\Johnson4320.denyHC.wpd              16

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ROMUNDO JOHNSON,

        Plaintiff,

v.

FELKER et al,

        Defendant.

Case Number: CV08-04320 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 9, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Romundo Johnson V-84332
Pleasant Valley State Prison
P.O. Box 8503
Coalinga, CA 93210

Dated: September 9, 2011

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk